UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PCVST Mezzco 4, LLC, et al.,

                             Plaintiffs,

            –v–

Wachovia Bank Commercial Mort'g Trust 2007-
C30, et al.,

                             Defendants.

14-cv-6023 (AJN)

OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

        Before the Court is Plaintiffs' motion to remand the case to New York state court for lack

of federal subject matter jurisdiction. *See* Dkt. No. 29.  For the reasons below, Plaintiffs' motion

is GRANTED.

## I.      BACKGROUND

        This case stems from the sale of the prominent New York residential development known

as Stuyvesant Town-Peter Cooper Village, commonly referred to as "Stuy Town."  In 2006,

Defendants PCV ST Owner L and ST Owner LP (the "Borrowers") purchased Stuy Town from

Metropolitan Life for $5.4 billion.  Compl. ¶ 22.  The purchase was financed with a $3 billion

mortgage on the property (the "Senior Loan") and eleven levels of mezzanine debt in descending

order of seniority totaling $1.4 billion (the "Junior Loans").  *Id.* ¶¶ 23, 28; Opp. 3.  The Senior

Loan is held currently by Defendants Wachovia Bank Commercial Mortgage Trust 2007-C30,

the COBALT CMBS Commercial Mortgage Trust 2007-C2, the Wachovia Bank Commercial

Mortgage Trust 2007-C31, the ML-CFC Commercial Mortgage Trust 2007-5, and the ML-CFC

Commercial Mortgage Trust 2007-6 (collectively the "Senior Lender") Compl. ¶ 24.  Plaintiffs

1

hold nearly all of Junior Loans 4-9. *Id.* ¶ 33; Opp. 4. The rights of the various lenders are controlled by an Intercreditor Agreement ("ICA"). Compl. ¶¶ 2, 32-33.

Several years after the initial purchase of Stuy Town, the Borrowers defaulted on the $3 billion Senior Loan. Compl. ¶ 43; Opp. 4. As a result, several of the Defendants brought a state-law foreclosure action against the Borrowers in this Court based on diversity jurisdiction. Compl. ¶ 45. *See also Bank of America, N.A. v. PCV st Owner LP, et al.*, 10-cv-1178 (AKH) (S.D.N.Y.). On April 22, 2010, the plaintiffs in that action filed a motion requesting foreclosure on the mortgage and a computation on the amount due on the Senior Loan. Pls.' Mot. Remand, Ex. 1. The Court foreclosed on the property and on June 21, 2010 entered a judgment granting the Senior Lender judgment in the amount of approximately $3.6 billion plus interest. Pls.'s Mot. Remand, Ex. 2, at 5; Opp. 5; Compl. ¶ 45. The judgment specified that interest was to be calculated on the judgment at the contract interest rate plus the default interest rate between April 22, 2010 and the date the judgment was entered, with interest subsequent to the date of judgment to be calculated "at the legal rate." Compl. ¶¶ 46-49.

Shortly after the foreclosure judgment was entered, Defendant PCV-M Holdings acquired Junior Loans 1-3. *Id.* ¶ 57. Although it is unrelated to the matter immediately before the Court, Plaintiffs believe this acquisition was in violation of the ICA. *Id.* ¶ 58. In May 2014, the Plaintiffs allegedly first learned that the Defendants intended to conduct a UCC foreclosure sale for the equity interests in the companies securing Junior Loans 1-3. *Id.* ¶¶ 59-60. Around this time, Plaintiffs allegedly received a flyer from a real estate brokerage firm announcing the impending sale and clarifying that any interested purchaser would be required to demonstrate the ability to fully pay off the Senior Loan at the time of closing. *Id.* ¶ 61. Concerned that the requirement to pay off the full Senior Loan would not apply to PCV-M or its affiliates, and

accordingly would grant them a multi-billion dollar advantage in any auction, the Plaintiffs requested postponement of the auction in a letter dated May 28, 2014. *Id.* ¶ 64. When Defendants denied this request, Plaintiffs attempted to exercise their option under the ICA to purchase Junior Loans 1-3 at par. *Id.* ¶ 70.

On June 3, 2014, the Defendants executed a deed in lieu of foreclosure agreement ("DIL"), transferring the property to several special purpose entities of their own designation. *Id.* ¶¶ 76-77. Plaintiffs claim that this allegedly self-dealing transaction was motivated by the Defendants' desire to maintain exclusive control over the property. *Id.* ¶ 81. The Plaintiffs allege that by transferring the property via the DIL to entities they controlled, the Defendants wiped out the value of Junior Loans 4-11 and secured themselves an unearned windfall to be realized whenever the property is ultimately sold for its fair market value. *Id.* ¶¶ 83-85. This windfall is equal to what Plaintiffs deem the "excess value" in the property, representing the difference between the property's fair market value and the amount due on the Senior Loan. *Id.* ¶ 78. Plaintiffs believe that the Junior Loan holders are entitled to a share of this excess value. *Id.* ¶ 85.

The parties dispute the precise sum of this excess value, due primarily to a disagreement over how interest should be calculated on the 2010 foreclosure judgment entered by this Court. *See* Pls.' Mot. Remand 2 n.1; Opp. 17. Plaintiffs argue that application of 28. U.S.C. § 1961, a federal statute governing post-judgment interest, renders an outstanding balance on the Senior Loan of $3.45 billion. Compl. ¶ 78. Estimating the fair market value of the property to be about $5 billion, they contend the "excess value" on the property is approximately $1.5 billion. *Id.* Defendants dispute the applicability of § 1961 and propose a post-judgment interest rate that

results in a significantly greater sum being due on the Senior Loan.  Defs.' Mot. Dismiss 33-35;
Compl. ¶ 78.

Critically for purposes of this motion, however, Plaintiffs allege that the Defendants will
reap windfall profits *regardless* of how the interest rate is calculated on the Senior Loan, because
in either instance the estimated value of the property will be greater than the outstanding balance
on the loan.  Compl. ¶ 78.  According to their pleadings, "[e]ven using [Defendants'] incorrect
and vastly overstated Senior Loan payoff amount of approximately $4.4 billion, the value of Stuy
Town is still worth hundreds of millions of dollars more."  *Id.*  Accordingly, the Plaintiffs allege
nearly half a billion dollars in damages even if they are incorrect in their calculation of interest
on the Senior Loan.  Pls.' Mot. to Remand 7; Compl. ¶¶ 78-84.  Favorable interpretation of §
1961 is not the *sine qua non* of their damages claim, but rather affects the "*additional* billion
dollars" in windfall profits Defendants allegedly stand to gain.  Pls.' Mot. Remand 7 (emphasis
added); Compl. ¶ 83.

On July 3, 2014, Plaintiffs filed this suit in the Supreme Court of the State of New York,
County of New York. Pls.' Mot Remand 7.  On August 1, 2014, Defendants removed the case
from New York court to this Court.  *Id.* 8.  Plaintiffs now seek to have the case remanded back to
New York Supreme Court.

## II.   LEGAL STANDARDS

Although the "vast majority" of cases brought into federal court on the jurisdictional
basis of 28 U.S.C. § 1331—providing for federal question jurisdiction—or 28 U.S.C. §
1441(a)—the federal removal statute—are those involving a federal cause of action, *see Grable
& Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 321 (2005) (Thomas, J.,
concurring), it is by now well established that such a cause of action is "not a necessary

condition for federal-question jurisdiction." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) (citing *Grable*, 545 U.S. at 311). "Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Only "[w]hen all four of these requirements are met" will federal jurisdiction be appropriate over a state-law claim. *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013).

While *Grable* opened the federal question door wider than proposed by Justice Holmes in *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) (holding that "[a] suit arises under the law that creates the cause of action"), the Supreme Court has nonetheless defined this genus of cases as a "special and small category." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). Moreover, it has clarified that it is more likely to arise when the case concerns the action of a federal agency and the federal question is "both dispositive of the case and [] controlling in numerous other cases." *Id.* at 700. In other words, the simple presence of a federal issue is insufficient to "open the arising under door" of federal jurisdiction. *Id.* at 701 (citing *Grable* at 545 U.S. at 313) (internal quotations removed).

Finally, it is "well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). However, the Defendants do not bear this burden in regards to each of the Plaintiffs' claims, as "a single claim can constitute sufficient basis for subject matter jurisdiction." *Gamoran v. Neuberger Berman Mgmt., LLC*, 10-cv-6234 (LBS), 2010 WL 4537056, at *3 (S.D.N.Y. Nov. 8, 2010).

## III.    DISCUSSION

At the outset, there is no disputing that the five claims plead by the Plaintiffs are state causes of action.[1] Defendants are therefore obliged to demonstrate that this case fits "into the slim category *Grable* exemplifies." *Empire Healthcare*, 547 U.S. at 701.

They are unable to meet this burden. Moreover, full analysis of the four *Grable* factors is not necessary here because the Defendants are unable to meet the threshold requirement of demonstrating that a federal question is necessarily raised by *any* of Plaintiffs' claims.

### A.    Defendants' Central Theory of Federal Jurisdiction is Incorrect

Defendants, effectively, have one theory as to why this case belongs in federal court. They contend that if § 1961 is found not to apply to the June 2010 foreclosure judgment, then "Plaintiffs can recover nothing," Opp. 10, and accordingly "have no case whatsoever." *Id.* 8. But this is plainly wrong. As explained above, at multiple points in their complaint the Plaintiffs explain that they still stand to recover a very substantial sum of damages even if their interpretation of § 1961 is incorrect. *See* Compl. ¶¶ 78-83. At various points in their opposition, Defendants attempt to circumvent this problem, but their reasoning is too clever by half. Specifically, Defendants contend that "only if Section 1961 supplied the proper rate of interest from the date of the 2010 Foreclosure Judgment could the value of the Property possibly exceed the amounts owing on the Senior Loan, *such that there would be "excess value" in the Property that amounts to over $1 billion.*" Opp. 15-16 (emphasis added). But a federal issue does not become a necessarily raised question simply because it "may play a role in determining the

---

[1] *See, e.g., Nat'l Telefilm Associates, Inc. v. Pamandia Prods., Inc.*, 42 A.D.2d 514, 514, 344 N.Y.S.2d 418, 419 (App. Div. 1973) (relief for breach of contract and unjust enrichment are properly sought under state law); *Vlad-Berindan v. LifeWorx, Inc.*, 13-cv-1562 (LB), 2014 WL 1682059, at *10 (E.D.N.Y. Apr. 28, 2014) (breach of contract and breach of implied covenant of good faith and fair dealing arise under New York law); *Am. Harley Corp. v. Irvin Indus., Inc.*, 27 N.Y.2d 168, 179 (1970) (tortious interference with contract is a state or common law action); *Greco v. Int'l Hodcarriers, Bldg. & Common Laborers' Union Local 17 Pension Fund*, 201 A.D.2d 65, 70, 613 N.Y.S.2d 996, 999 (App. Div. 1994) (breach of fiduciary duty claim governed by state law).

correct amount of damages in the case." *In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 65, 75 (D. Mass. 2006) (noting that federal law affected the calculation of damages, but concluding that a "case hardly turns on that"). *See also Sullivan v. Novartis Pharm. Corp.*, 602 F. Supp. 2d 527, 534 (D.N.J. 2009) (rejecting federal jurisdiction where "[u]nlike *Grable*, the federal issues embedded in Plaintiff's [] punitive damages claim are not dispositive of this case . . .").

The appropriate inquiry is not whether the accuracy of any single allegation in the Plaintiffs' complaint turns upon interpretation of federal law. Whether Plaintiffs alleged damages are greater or less than $1 billion does not resolve whether this Court has jurisdiction over their claims. Rather, the Court must determine whether any single "cause of action here necessarily stands or falls based on a particular interpretation or application of federal law." *Sung ex rel. Lazard Ltd. v. Wasserstein*, 415 F. Supp. 2d 393, 406 (S.D.N.Y. 2006).

Defendants repeat this argument, and variations of it, repeatedly throughout their opposition, but a review of each actual cause of action demonstrates that not one of them 'stands or falls' based on § 1961.

### B.   None of Plaintiff's Five Causes of Action Necessarily Raises a Question Concerning 28 U.S.C. § 1961

In determining "whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim." *Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012). *See also Empire Healthcare*, 547 U.S. at 700 (noting that in *Grable* the federal question was "dispositive of the case"); *In re Standard & Poor's Rating Agency Litig.*, 13-MD-2446 (JMF), 2014 WL 2481906, at *14 (S.D.N.Y. June 3, 2014) (rejecting jurisdiction where there was "no basis to conclude that" Defendant's "non-compliance with federal law . . . [w]as an 'essential element' of [plaintiff's] affirmative case"). Reviewing the

elements of Plaintiffs' claims demonstrates that § 1961 is not essential to the disposition of this case.

The first relevant cause of action is Plaintiffs' claim for breach of implied covenant of good faith and fair dealing.[2]  Compl. ¶¶ 96-105.  The implied covenant is breached "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*, 265 A.D.2d 513, 514 (N.Y. App. Div. 1999).  The Defendants contend that this claim hinges on the interpretation of § 1961, construing it as an allegation that they "breached the implied covenant of good faith because the alleged miscalculation of interest deprived Plaintiffs of the right to receive the excess value from the disposition of the Property . . ." Opp. 15.

But this misconstrues the nature of the Plaintiffs' complaint.  While the Plaintiffs allege that the Defendants breached the implied covenant of good faith in pursuit of the "hundreds of millions of dollars in default rate interest on the senior loan," Compl. ¶ 99, they allege this in the context of a "pattern of misconduct," *id.*, and a wider-ranging "bad faith scheme." *Id.* ¶ 100. The Plaintiffs describe a range of conduct on the part of the Defendants, including attempting to rig the auction of the property and attempting to negate the purchase option rights of the Junior Loan holders through the DIL transaction. *Id.*  This conduct was motivated by a desire to "(i) maintain ownership of Stuy Town . . . (ii) eliminate any possible dissenting voice that might challenge the disposition of the property; (iii) reap an unjust windfall by improperly seizing the excess value from the disposition of Stuy Town . . . and (iv) ensure that [Defendants] would

---

[2]  The Plaintiffs' first claim is for breach of contract.  The Defendants, who as the removing party must shoulder the burden of demonstrating that federal jurisdiction is appropriate, do not dispute that § 1961 is not an essential element for Plaintiffs to prove this claim. *See* Opp. 14-16 (contending that the application of § 1961 is necessary for Plaintiff's second through fifth claims).

collect hundreds of millions of dollars in default rate interest on the senior mortgage loan . . ."
Compl. ¶ 99.

In other words, the alleged attempt to game the calculation of interest on the foreclosure judgment was only one manifestation, *inter alia*, of the Defendants' attempts to deprive the Plaintiffs of the benefits of their bargain.  Interpretation of §1961 is not dispositive to this claim because "plaintiffs allege that defendants committed other acts" demonstrating bad faith.  *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F. Supp. 2d 1042, 1053-54 (D. Kan. 1999) (rejecting federal question jurisdiction where plaintiffs alleged multiple acts, including wrongful interpretation of federal patent laws, as evidence of unfair competition).  *See also Broder*, 418 F.3d at 194 (federal jurisdiction is not established where "a federal issue is present as only one of multiple theories that could support a particular claim."); *Washington Consulting Grp., Inc. v. Raytheon Technical Servs. Co., LLC*, 760 F. Supp. 2d 94, 105 (D.D.C. 2011) (federal issue is not necessarily raised where element of "state-law claims can be proven with reference to other aspects of plaintiff's well-pleaded complaint"); *In re The Reserve Fund Sec. & Derivative Litig.*, 09-cv-3786 (PGG), 2009 WL 3634085, at *5 (S.D.N.Y. Nov. 3, 2009) (rejecting federal question jurisdiction where "the invocation of federal law merely provides an alternate ground upon which liability might be premised").  Moreover, "[c]onsistent with the courts' practice of construing the removal statute narrowly," the Court "will not read a necessary federal issue into a state claim where the Plaintiff has merely bolstered his state claim allegations by providing multiple theories of liability."  *People of New York ex rel. Cuomo v. First Am. Corp.*, 07-cv-10397 (LTS) (HP), 2008 WL 2676618, at *4 (S.D.N.Y. July 8, 2008).

Because Plaintiff's breach of implied covenant of good faith and fair dealing claim references § 1961 in regards to only one indicia of bad faith among several, Defendants have not demonstrated that a federal question is necessarily raised.

Plaintiffs' next claim is for tortious interference with contract. Compl. ¶¶ 106-121. Under New York law, the elements of a tortious interference with contract claim "are well established—the existence of a valid contract, the tortfeasor's knowledge of the contract and intentional interference with it, the resulting breach and damages." *Hoag v. Chancellor, Inc.*, 246 A.D.2d 224, 228 (N.Y. App. Div. 1998) (citing *Loftus, Inc. v. White,* 150 A.D.2d 857, 859 (N.Y. App. Div. 1989).

Determining the existence of a contract, its breach, and, as already explained, damages does not necessarily raise an issue relating to § 1961. However, the Defendants contend that one of the alleged motivations for this intentional interference is that the Defendants "stood to profit directly from [] miscalculation of the interest" on the foreclosure judgment. Opp. 15 (citing Compl. ¶ 113). But this again ignores that this was only one of several alleged motivations and provided for only part of the alleged illicit gain. As the complaint notes, independent from the miscalculation of the interest rate, Defendants "stood to profit directly from the delivery of cash flows . . ." Compl. ¶ 113. Simply because one motivation for a tort, among several, poses a question of federal law does not render that question necessarily raised for jurisdictional purposes.

Plaintiffs' fourth claim is for breach of fiduciary duty. Compl. ¶¶ 122-140. "The elements of a claim for breach of fiduciary duty under New York law are breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages" proximately caused by the breach. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of*

*Am. Sec., LLC*, 591 F. Supp. 2d 586, 589-90 (S.D.N.Y. 2008).  None of these elements

necessitates interpretation of § 1961.  Defendants once again fall back on their mistaken

characterization of the complaint, arguing that the core of this claim is that "Defendants

wrongfully represented in the DIL agreement that the value of the Property was less than the

amounts that were due and owing on the Senior Loan *because* Defendants incorrectly applied the

interest rates provided for by the Senior Loan Documents." Opp. 16 (citing Compl. ¶¶ 78, 129)

(emphasis added).  But what the complaint actually alleges is that the "Senior Lender unjustly

deprived Junior Lenders, including the Plaintiffs, of the ability to receive the excess value that

would have flowed to the Junior Borrowers and ultimately to the Junior Lenders . . ." Compl. ¶

129.  Reading § 1961 is only necessary in determining the size of this excess value, not

determining whether it exists.  *See Baptist Hopstials of Miami, Inc. v. Wellcare of Florida, Inc.*,

10-cv-22858, 2011 WL 2084003, at *4 (S.D. Fla. May 23, 2011) (no federal jurisdiction where

federal law simply impacted the extent of plaintiff's damages and was not dispositive of the

claim).

Unsurprisingly, the Defendants attack the Plaintiffs' fifth and final claim, for unjust

enrichment, Compl. ¶¶ 134-140, on the same faulty ground.  Opp. 16.  In New York, "[t]o

prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched,

(2) at that party's expense, and (3) that it is against equity and good conscience to permit [the

other party] to retain what is sought to be recovered." *Marini v. Lombardo*, 79 A.D.3d 932, 934

(N.Y. App. Div. 2010) (internal quotations removed).  Defendants assert that "[t]his claim also

hinges entirely on Plaintiffs' contention that the interest rate set forth in Section 1961 should

have been applied." Opp. 16.  But this assertion is only accurate in regards to the specific

question of whether the Defendants were unjustly enriched to the tune of "over a billion dollars."

Compl. ¶ 135.  It is not dispositive of whether Defendants were unjustly enriched *at all*.
Accordingly, Defendants fail to meet the first *Grable* standard in regard to this claim as well.

In summation, Defendants are at most able to show that the interpretation of § 1961 has a
very significant impact on the extent of the Plaintiffs' alleged damages.  But they are wholly
unable to show that a single "cause of action here necessarily stands or falls based on a particular
interpretation or application of federal law." *Wasserstein*, 415 F. Supp. at 406.  Contrary to their
arguments, the case of *Baptist Hospital* is entirely on point.  In that case a group of hospitals in
Florida sued a government-sponsored HMO for failing to reimburse the hospitals pursuant to a
Florida statute that required reimbursing emergency services and care at the "Medicaid rate."
2011 WL 2084003, at *2.  Although determining the appropriate Medicaid rate raised the specter
of federal law, the plaintiffs were "still claiming that [they weren't] paid the default rate owed
under [Florida law], however the rate-ceiling is calculated." *Id.* at *3.  Similarly, Plaintiffs here
are still claiming they were deprived of the "excess value" in the property regardless of how that
value is impacted by the calculation of interest on the foreclosure judgment.[3]

*Nicodemus v. Union Pac. Corp.* is not useful to the Defendants' argument.  In that case, a
group of Wyoming landowners brought a number of state law claims against the Union Pacific
railroad.  440 F.3d 1227 (10th Cir. 2006).  Pursuant to federal law, the railroad held a
longstanding right-of-way over the plaintiffs' land.  *Id.* at 1233.  Without the landowners'
consent, the railroad entered into agreements with various telecommunications providers,

---

[3] Defendants meekly attempt to distinguish *Baptist Hospital* on the theory that in that case the federal question was
introduced by the removing party as part of an affirmative defense to liability, whereas in this case 28 U.S.C. § 1961
was initially raised by Plaintiffs in their complaint. Opp. 14. While the Defendants are correct that the disposition
of the two cases differ in that regard, it does not alter the fact that the *Baptist Hospital* court concluded that a federal
question impacting the extent of liability "is not even the kind of purely legal question that would be dispositive" of
the claim. 2011 WL 2084003, at *4. Which party raises the federal issue is not dispositive of a claim.

granting them licenses to install fiber optic cables within the federally granted right-of-way. *Id.* Plaintiffs alleged that this exceeded the scope of the right of way. *Id.*   In concluding that federal jurisdiction was appropriate, the Tenth Circuit observed that "[a]ll of Plaintiffs' claims hinge on whether Union Pacific's use of the right-of-way has exceeded the purpose for which it was granted." *Id.* at 1234.   Because construing "the scope of a right granted to the railroads pursuant to federal law" was a precondition to the plaintiffs succeeding on any of their state-law claims, federal jurisdiction was appropriate. *Id.* at 1237.

That is a far cry from the current case, where the rights of the respective parties are controlled by a private contract, rather than a century's old federally granted right that was part of "the federal government's subsidization of the construction of a transcontinental railroad." *Id.* at 1236.  This case invokes no comparable federal interest, scheme, or agency.  Rather, it is a contract dispute between private parties, turning almost entirely on construction of a private contract, and failing to present any dispositive question of federal law.  *See Morgan Cnty. War Mem'l Hosp. ex rel. Bd. of Directors of War Mem'l Hosp. v. Baker*, 314 F. App'x 529, 536 (4th Cir. 2008) (denying federal jurisdiction where the dispute "centers on the actions of private parties" and where resolution of federal law was not 'dispositive' on state breach of fiduciary duty claim).  In sum, while in *Nicodemus* the scope of the federal land grant was a dispositive threshold question for each of the plaintiffs' state law claims, in the present action § 1961 is primarily relevant *after* Plaintiffs have established liability and, even then, only bears on the scope, rather than the existence, of damages.

### C.    Plaintiff's Request for Fees and Costs

The Plaintiffs request that they be awarded their costs and fees associated with removal under 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require

payment of just costs and any actual expenses, including attorney fees, incurred as a result of []

removal."  However, "[a]bsent unusual circumstances, courts may award attorney's fees under §

1447(c) only where the removing party lacked an objectively reasonable basis for seeking

removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."

*Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005). *See also Little Rest Twelve, Inc. v.*

*Visan,* 829 F.Supp.2d 242, 245 (S.D.N.Y. 2011) (awarding costs and fees is discretionary and is

only appropriate where "the removing party lacked an objectively reasonable basis for seeking

removal.")

     While the Court does grant Plaintiffs' motion to remand, their request for fees and costs

is denied.  Although the Court has determined that the clear weight of legal authority supports

remanding this case, it cannot be said that Defendants' position is so wholly frivolous or

unreasonable as to warrant an award of costs and fees.  Plaintiffs stake the lion's share of their

alleged damages on a favorable interpretation of § 1961 and raise it frequently as an issue within

their complaint, including as evidence of the Defendants' bad faith conduct.  Compl. ¶¶ 96-121

(claims for breach of implied covenant and tortious interference with contract).  Moreover,

whether § 1961 grants this Court jurisdiction is a reasonably novel legal question.  The Court is

aware of only one other court that has opined on the issue, and while it also found a lack of

federal jurisdiction, it reached its conclusion without significant analysis.  *See Rodriguez v.*

*Jaddie Stewart Agency Inc.*, No. 08-CV-0046 (JFB) (AKT), 2009 WL 212123, at *6 (E.D.N.Y.

Jan. 28, 2009) ("although the amended complaint attempts to invoke the Court's jurisdiction

under 28 U.S.C. § 1961 through 1986, none of those sections provide a basis for federal question

jurisdiction.").

In light of these considerations, the Court concludes that granting Plaintiffs' their costs and fees associated with removal is inappropriate.

## IV.    CONCLUSION

In conclusion, Plaintiffs' motion to remand is GRANTED and the case is remanded back to New York state court.  Plaintiffs' request for fees and costs associated with removal is DENIED.  This resolves Dkt. No. 29 and the clerk is requested to terminate all open motions in 14-cv-16023 and to remand this case to the state court from which it was removed in the first instance.


        SO ORDERED.




Dated: January 1 , 2015
        New York, New York

                                          _____
                                                ALISON J. NATHAN
                                             United States District Judge

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JAN 1 2 2015
```

15